Kevin W. MURPHY, By and Through his legal guardians, Kevin C. and Janice MURPHY

v.

TIMBERLANE REGIONAL SCHOOL DISTRICT.

Civ. No. 90–265–SD.

United States District Court, D. New Hampshire.

May 10, 1993.

Michael Chamberlain, Manchester, NN, for plaintiffs.

Gerald M. Zelin, Salem, NH, for defendant.

## ORDER

DEVINE, Senior District Judge.

Plaintiff Kevin W. Murphy, by and through his parents and legal guardians Kevin C. Murphy and Janice Murphy, brings this action on appeal from a hearing officer's decision pursuant to the Individuals with Disabilities Education Act (codified at 20 U.S.C. § 1400, *et seq.* (1990 & Supp.1993), formerly the Education of the Handicapped Act, formerly the Education for All Handicapped Children Act) ("Act"), 20 U.S.C. § 1415 (1990 & Supp.1993). Kevin seeks an award of compensatory education for the period between January 1, 1982, and December 31, 1983, during which defendant Timberlane Regional School District allegedly denied him special education services. In addition, Kevin seeks relief under 42 U.S.C. §§ 1983 and 1988 to secure his rights under the Act. The court has jurisdiction of this action under 20 U.S.C. § 1415 (1990 & Supp.1993), 28 U.S.C. §§ 1331 (Supp.1993) and 1343 (Supp.1993), and 42 U.S.C. §§ 1983 and 1988 (Supp.1993).

For a recitation of the factual background of this case, *see Murphy v. Timberlane Regional School Dist.,* 973 F.2d 13 (1st Cir. 1992).

In its order of August 26, 1991, this court granted defendant's April 1, 1991, motion for summary judgment based on a finding that plaintiff's claims were barred by the equitable defense of laches. Said order was vacated and remanded by the First Circuit Court of Appeals in *Murphy v. Timberlane, supra.* Pursuant to the First Circuit's opinion, this court held a hearing on the laches issue on January 28, 1993.

Presently before the court are (1) defendant's original motion for summary judgment dated April 1, 1991; (2) defendant's February 18, 1993, motion for summary judgment to dismiss the Murphys' compensatory education claim as untimely under the statute of limitations; and (3) plaintiff's motion for summary judgment, filed on April 9, 1993.

*I. The Statute of Limitations Issue*

**a. Defendant's Argument**

■ Defendant concedes that

[a]t the time this case arose, neither the IDEA nor RSA [New Hampshire Revised Statutes Annotated] 186–C[1] contained a statute of limitations for requesting an administrative hearing or for seeking judicial review of the hearing officer's decision.

Memorandum of Law in Support of School District's Motion to Dismiss the Murphys' Compensatory Education Claim as Untimely Under the Statute of Limitations ("Defendant's Memo on Statute of Limitations") at 17. However, defendant contends that the court should fill this gap by following " 'the settled practice' " of " 'adopt[ing] a local limitation as federal law *if it is not inconsistent with federal law or policy to do so.' " Id.* at 17–18 (quoting *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985)) (emphasis added).

Accordingly, defendant contends that the court must choose between RSA 507–B:7, which provided a limitations period of four years from the time the cause of action accrued on "Bodily Injury Actions Against Governmental Units" during the period from August 22, 1981, through May 17, 1989,[2] and RSA 508:4 I, which provided a limitations period of six years from the time the cause of action accrued on "all personal actions, except actions for slander or libel," "[e]xcept as otherwise provided by law," during the period from August 28, 1981, through July 1, 1986.[3] *See* Defendant's Memo on Statute of Limitations at 18. Defendant "urges the court to borrow the shorter statute, RSA 507–B:7," contending that "it is more consis-

tent with the policies underlying the IDEA." *Id.*

Defendant contends that "[a] cause of action under the IDEA accrues 'when parents know or have reason to know of the injury or event that is the basis for their claim,' " *id.* at 35 (quoting *Hall v. Knott County Bd. of Educ.,* 941 F.2d 402, 408 (6th Cir.1991)), *cert. denied,* —— U.S. ——, 112 S.Ct. 982, 117 L.Ed.2d 144 (1992). To support its interpretation of *Hall,* defendant cites *McDowell v. Fort Bend Indep. School Dist.,* 737 F.Supp. 386 (S.D.Tex.1990), for the proposition that "[t]he plaintiff must be in possession of 'critical facts' which indicate that he has been hurt and that the defendants are responsible for this injury." Defendant's Memo on Statute of Limitations at 35 (citing *McDowell* at 389). Defendant contends that, based on *Hall* and *McDowell,* the court must find that plaintiff's compensatory education claim "accrued when Kevin was out of school," *id.,* which defendant characterizes as "between January 1982 and October 1983," *id.*

Plaintiff did not seek a due process hearing until August 22, 1989. Therefore, if the court were to accept defendant's reasoning in its entirety, it would conclude that the plaintiff's action is barred by RSA 507:B-7.

**b. Defendant's Breach of a "Procedural Safeguard"**

As the First Circuit recognized in its opinion, during the period of the Murphys' dispute with Timberlane over the propriety of the 1981–82 IEP, Timberlane was bound by N.H.Code Admin.R.Ed. 1125.01(b)(3)–b (Aug. 1981),[4] pursuant to which it was "required to initiate administrative procedures to obtain permission from a hearing officer to imple-

---

**1.** RSA 186–C implements the Act. *See Timothy W. v. Rochester, N.H., School Dist.,* 875 F.2d 954, 973 (1st Cir.1989), *cert. denied,* 493 U.S. 983, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989).

**2.** *See* RSA 507–B:7 (Supp.1991), establishing a three-year limitations period.

**3.** *See* RSA 508:4 I (Supp.1991), establishing a three-year limitations period.

**4.** Rule 1125.01(b)(3)–b provided:
If the parent(s) inform the district of their disagreement, or if they fail to make a decision within the specified time frame, it shall be

interpreted as disagreement with the decision or action proposed by the local school district's Special Education Evaluation/Placement Team. If the Local Education Agency feels its action or decision should, in the best interests of the student, be implemented, the Local Education Agency shall initiate its right of due process as specified in the *Complaint and Impartial Due Process Hearing Procedures* Section of these *Standards* to obtain the authority to implement its decision.
This rule is currently designated as N.H.Code Admin.R.Ed. 1125.01(b)(3)(C).

ment the IEP." *Murphy*, 973 F.2d at 17. As the First Circuit noted, "No such procedures were ever initiated by Timberlane." *Id.*

The promulgation of Rule Ed. 1125.-01(b)(3)–b was authorized pursuant to 20 U.S.C. § 1415(a), which provided:

Any State educational agency, any local educational agency, and any intermediate educational unit which receives assistance under this subchapter shall establish and maintain procedures in accordance with subsection (b) through subsection (e) of this section *to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate education by such agencies and units.*

(Emphasis added.) Further, the stated purpose of the Act was

to assure that all handicapped children have available to them, within the time periods specified in section 1412(2)(B) [5] of this title, a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of handicapped children and their parents or guardians are protected, to assist States and localities to provide for the education of all handicapped children, and to assess and assure the effectiveness of efforts to educate handicapped children.

20 U.S.C. § 1400(c).[6] In light of the above, the court concludes that Rule Ed. 1125.-01(b)(3)–b constituted a "procedural safeguard[ ]", 20 U.S.C. § 1415(a), embodying the Act's purpose of "assur[ing] that all handicapped children have available to them, within the time periods specified in section 1412(2)(B) of this title, a free appropriate public education . . . ." 20 U.S.C. § 1400(c). Had Timberlane complied with this procedural safeguard, it would have initiated the same administrative hearing and judicial review process it now seeks to nullify by invok-

ing RSA 507–B:7. *See and compare* Rule Ed. 1125.01(b)(3)–b (quoted *supra*) *with* N.H.Code Admin.R. ch. Ed. 1127 (Aug.1981) *and* 20 U.S.C. § 1415(b).

In its opinion, the First Circuit found that the failure to comply with Rule 1125.01(b)(3)–b diminished Timberlane's standing in equity to invoke the defense of laches. *Murphy v. Timberlane, supra,* 973 F.2d at 17. Specifically, that court stated:

[W]e are troubled by Timberlane's attempt to fault the Murphys for their failure to file for a due process hearing when, although the parents are entitled to request a hearing if they disagree with an IEP, state regulations impose upon Timberlane not only the right, but the *obligation* to do the same.

*Id.* (emphasis in original).

This court is equally troubled by Timberlane's current attempt to capitalize on its own failure to comply with the Act, as reinforced by New Hampshire law, at the expense of both Kevin and the legislative goals underlying the Act. In particular, the court notes that, rather than complying with Rule 1125.01(b)(3)–b and implementing the putatively appropriate IEPs in question, Timberlane has sought only to ensure that no hearing on the merits of this case ever takes place. Clearly, the procedural safeguards of section 1415 and its progeny in the form of Rule Ed. 1125.01(b)(3)–b were intended to thwart such behavior and to prevent the occurrence of situations such as this, where more than a decade has passed since the initial IEP dispute, while the merits of that dispute still remain unaddressed.

In *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court, in addressing the appropriate limitations period for suits brought under both section 301 of the Labor Management Relations Act and the National Labor Relations Act, discussed its general approach to the issue of applying

---

**5.** In conjunction with RSA 186–C:9, section 1412(2)(B) entitled Kevin to receive education services until age 21 or the date of his graduation from high school.

**6.** Congress has amended the above-quoted sections by substituting "children with disabilities" for "handicapped children". *See* 20 U.S.C. § 1415(a) (Supp.1993) *and* § 1400(c) (Supp. 1993).

state statutes of limitations to actions brought under federal law:

> As is often the case in federal civil law, there is no federal statute of limitations expressly applicable to this suit. In such situations we do not ordinarily assume that Congress intended that there be no time limit on actions at all; rather, our task is to 'borrow' the most suitable statute or other rule of timeliness from some other source. We have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law. 'The implied absorption of State statutes of limitation within the interstices of the federal enactments is a phase of fashioning remedial details where Congress has not spoken but left matters for judicial determination within the general framework of familiar legal principles.' *Holmberg v. Armbrecht,* 327 U.S. 392, 395 [66 S.Ct. 582, 584, 90 L.Ed. 743] (1946).

> In some circumstances, however, state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law. In those instances, it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law.

> > "[T]he Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies. 'Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide.' " *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 367 [97 S.Ct. 2447, 2455, 53 L.Ed.2d 402] (1977) (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 465 [95 S.Ct. 1716, 1722, 44 L.Ed.2d 295] (1975)).

> *Hence, in some cases we have declined to borrow state statutes but have instead used timeliness rules drawn from federal law—either express limitations periods from related federal statutes, or such alternatives as laches.*

*Id.,* 462 U.S. at 158–62, 103 S.Ct. at 2287–89 (footnotes and citations omitted) (emphasis added).

Because "compensatory education ... is a form of equitable relief," *Murphy v. Timberlane, supra,* 973 F.2d at 16, this court is further guided by the Supreme Court's opinion in *Holmberg v. Armbrecht, supra,* in which the Court addressed the appropriate limitations period on a suit in equity under section 16 of the Federal Farm Loan Act.

> The present case concerns not only a federally-created right but a federal right for which the sole remedy is in equity.... We do not have the duty of a federal court, sitting as it were as a court of a State, to approximate as closely as may be State law in order to vindicate without discrimination a right derived solely from a State. We have the duty of federal courts, sitting as national courts throughout the country, to apply their own principles in enforcing an equitable right created by Congress. When Congress leaves to the federal courts the formulation of remedial details, it can hardly expect them to break with historic principles of equity in the enforcement of federally-created equitable rights.

> Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief. Such statutes have been drawn upon by equity solely for the light they may shed in determining that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair.

*Id.,* 327 U.S. at 395–96, 66 S.Ct. at 584 (citations omitted). In light of the foregoing, as well as the Supreme Court's admonition that [e]quity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that 'laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties.'

**1132**

id. at 396, 66 S.Ct. at 584 (quoting *Galliher v. Cadwell,* 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738 (1892)), and bearing in mind that the First Circuit in its opinion held the equitable defense of laches to be "available to a claim for compensatory education," *Murphy v. Timberlane, supra,* 973 F.2d at 16, this court finds that under the circumstances of the instant case, the application of the doctrine of laches is an appropriate alternative to the borrowing of a "mechanical" state statute of limitations that would exert an effect contrary to the design and purposes of the federal statute at issue.

Therefore, the court's resolution of defendant's motion for summary judgment based on the statute of limitations issue depends upon its determination as to whether or not defendant should prevail in its assertion of laches.

*II. The Laches Issue*

■ In its opinion, the First Circuit held that "the Murphys' delay in filing their claim was *not so unreasonable as to make the laches defense available without a clear showing of prejudice." Murphy v. Timberlane, supra,* 973 F.2d at 16 (emphasis added). The court provided the following assessment of the evidence upon which this court had based its finding of prejudice:

> The district court's conclusion that the Murphys' delay in filing their claim prejudiced Timberlane was based on the following: because Kevin is now over 21 years of age, the state will not reimburse Timberlane for the costs associated with compensatory education; memories of witnesses from the 1981–83 period have faded; most of the principal actors from the 1981–83 period have left the jurisdiction of Timberlane; and in light of the posture of this case, no stay-put provision was in place, and Kevin has been out of any publicly funded educational system since 1989.

> The circumstances cited by the district court do not provide a showing of prejudice sufficient to support summary judgment on the basis of laches. *The laches doctrine may be invoked only where the prejudice to the defendant flows from the plaintiff's delay. See Gutierrez v. Water-*

*man Steamship Corp.,* 373 U.S. 206, 215–16, 83 S.Ct. 1185, 1191–92, 10 L.Ed.2d 297 *reh'g denied,* 374 U.S. 858, 83 S.Ct. 1863, 10 L.Ed.2d 1082 (1963); *Puerto Rican–American Ins. Co. v. Benjamin Shipping Co.,* 829 F.2d 281, 284 (1st Cir.1987); *Cruz v. Hauck,* 762 F.2d 1230, 1238 (5th Cir. 1985). Two of the factors relied on by the district court have nothing to do with the Murphys' delay in filing their claim. Although it may be true that the state would not contribute to Timberlane's expenditures on compensatory education, that hardship is not attributable to the parents' delay. If the Murphys had sought and received a compensatory education award in 1984, Timberlane would still be required to bear the cost without assistance from the state. Similarly, any prejudice to Timberlane that might result from the fact that Kevin has been out of school throughout the course of these proceedings is not attributable to the parents' delay.

> The two remaining factors upon which the district court relied also do not support a grant of summary judgment. *First, there was no evidence before the district court that the memories of witnesses had failed. Second, the district court's finding that key witnesses were unavailable was premature.*

*Murphy v. Timberlane, supra,* 973 F.2d at 17–18 (emphasis added).

In light of the above, the court concludes that the only remaining issues of prejudice are (1) whether key witnesses are unavailable and (2) whether the memories of witnesses have failed. The court's findings with respect to these issues must be "bas[ed] ... on the preponderance of the evidence." 20 U.S.C. § 1415(e)(2).

a. Unavailability of "Principal Actors"

In its original Memorandum of Law in Support of the School District's Request for Summary Judgment ("Defendant's Original Memo"), defendant contended that it "ha[d] been prejudiced ... by the Murphys' failure to request an administrative hearing at an earlier date" in part because "most of the principal actors from that period are gone." Defendant's Original Memo at 19–20. Defen-

dant then listed as "gone" the following individuals: "Robert Crompton, Timberlane's Superintendent of Schools at that time ...; Nickolas [sic] Sarbanis (Timberlane's Director of Special Education from 1981 through 1985); Martha Kadel (who taught Kevin at Pollard School before September 1981 and during the spring of 1982) and Claudia Libis (the teacher of the blind at Pollard School during the 1982–83 school year....") Defendant's Original Memo at 21.

Bearing in mind that (1) Claudia Libis and Martha Kadel appeared as witnesses at the January hearing; (2) defendant does not now contend that Nicholas Sarbanis is unavailable, Timberlane Regional School District's Trial Memorandum on Laches at 9; and (3) while defendant describes Robert Crompton as being "beyond state subpoena power," id. at 8, it has failed to demonstrate that a subpoena would be required to obtain Mr. Crompton's presence at any proceeding regarding the instant case, the court finds, based on the preponderance of the evidence, that defendant has failed to demonstrate the unavailability of key witnesses.

b. "Failed Memories" of Witnesses

Defendant contends that it "has been prejudiced because the memories of critical witnesses have faded." Timberlane Regional School District's Trial Memorandum on Laches at 9. Defendant identifies these "critical witnesses" as "Kathy Downes, Kevin's primary teacher in Nashua during 1981–82," id.; "Gail Barringer, Nashua's special education director for the past 19 years," id. at 10–11; "Terry Lemaire, the current assistant special education director in Nashua [who] in 1981–1982 co-taught with Kathy Downes Kevin's class at Charlotte Avenue," id. at 11; "Robert Cote who attended the meeting to develop Kevin's Nashua IEP," id.; "Tom Caron, the principal of the Pollard School for 27 years and a member of Kevin's special education team," id. at 12; "Claudia Libis," id.; and "Jean Parsons, Kevin's occu-

pational therapist from 1979–1981 at the same time that Kevin was in Martha Kadel's class," id.

Robert Cote's testimony at the January hearing revealed that he was not a significant participant in Kevin's special education program. Therefore, the quality of Mr. Cote's memory of the instant matter is irrelevant as to the issue of prejudice.

At the January hearing, Kathy Downes, Gail Barringer, Terry Lemaire, Tom Caron, Claudia Libis, and Jean Parsons each testified on defendant's direct examination as to aspects of their involvement with Kevin's special education program which they could not remember. On plaintiff's cross-examination, however, each acknowledged that defendant had not shown them relevant documents contained in the record of the instant case,[7] such as transcripts of significant meetings concerning Kevin. Defendant's failure to make a reasonable effort to revive the memories of these witnesses casts doubt upon the validity of its contention that said memories have failed.[8] Meanwhile, plaintiff's witness Martha Kadel, cited by defendant as a "principal actor" in the instant matter, testified in detail about her involvement with Kevin's special education program without showing signs that her memory of the instant matter had failed.

Accordingly, the court finds, based on the preponderance of the evidence, that defendant has failed to demonstrate that any of its relevant witnesses suffer from failed memories.

In light of the foregoing, and based on the preponderance of the evidence, the court finds that defendant has failed to make "a clear showing of prejudice" sufficient to justify a finding of laches. Therefore, defendant's original motion for summary judgment and defendant's motion for summary judgment based on the statute of limitations issue are denied.

**7.** For example, Terry Lemaire, who on direct examination stated that she did not recognize a document identified as an IEP, acknowledged on cross-examination that defendant had not shown her the document prior to the hearing.

**8.** The court notes that when plaintiff's counsel showed Claudia Libis a transcript of a September 1982 meeting, the witness, cited by defendant as a "principal actor" in the instant matter, acknowledged a clear recollection of a matter contained therein.

*III.   Plaintiff's Motion for Summary Judgment on the Merits*

a.   Defendant's Rule 56(f) Argument

On March 16, 1993, this court notified the parties that it was considering the entry of summary judgment on the merits of plaintiff's claims in the instant action, and ordered them to submit within ten days any memoranda of law or evidence which might be relevant to said consideration.   On March 23, 1993, the clerk of court granted defendant's unobjected-to motion to postpone the deadline for filing memoranda of law and/or evidence to April ·9, 1993.

█  Defendant contends that the court should "allow the school district the opportunity to conduct discovery before this court rules on the merits by way of summary judgment" because "[t]he school district must have an opportunity to conduct discovery to reconstruct th[e] chronology [of Kevin's education] and to fill in critical gaps about events which occurred before, during, and after the years in question."   Memorandum of Law in Support of Objection to Motion for Summary Judgment ("Defendant's Objection Memo") at 2–3.   *See also* Timberlane's Memorandum of Law pursuant to the March 16, 1993, Order ("Defendant's Memo Pursuant to Order") at 1–5.   Defendant invokes Rule 56(f) in support of its contention.   *Id.* at 2.

Rule 56(f), Fed.R.Civ.P., provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Defendant contends,

> [A]s the testimony at the laches hearing amply demonstrated, essential school district witnesses could not recall key events in the chronology of Kevin's education. The school district must have an opportunity to conduct discovery to reconstruct that chronology and to fill in critical gaps

about events which occurred before, during, and after the years in question.

Defendant's Memo Pursuant to Order at 4–5. Defendant offers no further justification for its contention that discovery is necessary to reconstruct the chronology of Kevin's education.   Therefore, bearing in mind the court's finding that defendant has failed to demonstrate by a preponderance of the evidence that any of its relevant witnesses suffer from failed memories, the court concludes that the evidence contained in said memories was available to defendant when it prepared its response to plaintiff's motion for summary judgment.   Accordingly, the court finds that defendant has failed to demonstrate that it "cannot . . .· present by affidavit facts essential to justify [its] opposition" to plaintiff's motion for summary judgment.   Rule 56(f).

b.   Defendant's Objection to · Documents

Defendant contends that in deciding plaintiff's motion for summary judgment the court should not consider "new documents by Drs. Packard, Cusha and the Perkins School" attached to Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Plaintiff's Summary Judgment Memo") as exhibits, Defendant's Objection Memo at 4, because "some of these documents are not in affidavit form as required by Rule 56(e)," *id.,* and "[s]ome of those documents are old records which should have been produced earlier," *id.* at 5.   Because the court is able to resolve the instant motion without considering those particular documents, it does not address defendant's objections to same.

c.   Summary Judgment Standard

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Rule 56(c), Fed. R.Civ.P.

In assessing whether a dispute is material, the district court must look to the substantive law of the case, for '[o]nly disputes over facts that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment.'

Lipsett v. University of Puerto Rico, 864 F.2d 881, 894 (1st Cir.1988) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

### d. Plaintiff's Compensatory Education Claim

■ This court has previously held "that compensatory education is an available form of relief under the Act." Manchester School Dist. v. Christopher B., 807 F.Supp. 860, 867–88 (D.N.H.1992) (citing Burlington School Comm. v. Department of Educ., 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), aff'g, Town of Burlington v. Department of Educ., 736 F.2d 773 (1st Cir.1984); Lester H. v. Gilhool, 916 F.2d 865 (3d Cir.1990), cert. denied sub nom., Chester Upland Sch. Dist. v. Lester H., —— U.S. ——, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991); Burr v. Ambach, 863 F.2d 1071 (2d Cir.), vacated and remanded sub nom., Sobol v. Burr, 492 U.S. 902, 109 S.Ct. 3209, 106 L.Ed.2d 560 (1988), reaff'd, 888 F.2d 258 (2d Cir.1989), cert. denied, 494 U.S. 1005, 110 S.Ct. 1298, 108 L.Ed.2d 475 (1990); Jefferson County Bd. of Educ. v. Breen, 853 F.2d 853 (11th Cir.1988); Miener v. Missouri, 800 F.2d 749 (8th Cir.1986); Hall v. Knott County Bd. of Educ., supra, 941 F.2d at 407, (action barred by applicable statute of limitations)).

In Burlington School Committee, the Supreme Court held that section 1415 authorizes reimbursement of parents "for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." Id., 471 U.S. at 369, 105 S.Ct. at 2002. "Like the retroactive reimbursement in Burlington, imposing liability for compensatory educational services on the [responsible government entities] 'merely requires [them] to belatedly pay expenses that [they] should have paid all along,' [471 U.S. at 370–71, 105 S.Ct. at 2003]." Miener v. Missouri, supra, 800 F.2d at 753. "Compensatory education, like retroactive reimbursement, is necessary to preserve a [disabled] child's right to a free education.... [P]roviding a compensatory education should

serve as a deterrent against states['] unnecessarily prolonging litigation in order to decrease their potential liability." Jefferson, supra, 853 F.2d at 857–58.

In its opinion, the First Circuit found, inter alia, the following,

> In September 1981, Kevin was transferred from his previous placement to a special program at Charlotte Avenue School, a public elementary school in Nashua, New Hampshire. Although Kevin's parents had originally agreed to this new placement, they soon became concerned about the appropriateness of the placement, and expressed their objections to Kevin's teacher and to Timberlane's special education administrators. In December 1981, Kevin suffered a seizure at home, and his parents decided not to return Kevin to school after the winter break.
>
> In January 1982, the school superintendent authorized the director of special education to provide tutorial services to Kevin in his home. A year later, the State Department of Education strongly recommended that the district provide Kevin with home-based instruction. No such services were ever provided.
>
> Mr. Murphy wrote letters to Timberlane in January and February 1982, notifying the school district of his decision to keep Kevin at home, complaining that Kevin was being denied an education, and threatening to bring an action against the district. Kevin remained at home throughout 1982 and 1983.

Murphy v. Timberlane, supra, 973 F.2d at 14–15.

The First Circuit concluded,

> Although the Murphys could have requested a due process hearing in late 1981 when they first felt that the education being provided by Timberlane was inappropriate, they chose instead to negotiate with the school in an attempt to secure an appropriate program for Kevin. The Murphys attended no less than six meetings between January and September 1982. Further, although the pupil placement Team had not yet agreed on a program for Kevin, the Murphys agreed to allow Kevin

**1136**

to attend school for a short period in June 1982 for the purpose of evaluating Kevin and determining his needs. Obviously, the Murphys were not sitting on their rights, but were attempting to resolve their differences with the school district without resorting to litigation.

*Id.* at 16.

In light of the foregoing, bearing in mind defendant's breach of its duty under Rule 1125.01(b)(3)–b, and based on the evidence before it, the court finds that there is no genuine issue regarding the fact that defendant failed to provide Kevin with a free, appropriate public education during 1982 and 1983, years in which he was entitled to such under the Act.

Accordingly, because an award of compensatory education is an appropriate "response" to a local education authority's "failure to provide an appropriate education," *Jefferson County Bd. of Educ., supra,* 853 F.2d at 857, plaintiff's motion for summary judgment is granted, and the court orders defendant to provide Kevin with two years of compensatory education beginning at the commencement of the school year which starts in September 1993. Kevin's program for each of the two years is to be determined according to the IEP procedures set forth in the Act at 20 U.S.C. § 1401(a)(20) (Supp. 1993). Delays in this process resulting from bad faith on the part of either party will be addressed using the full range of equitable powers available to the court.

*Conclusion*

For the reasons stated herein, the court (1) denies defendant's original motion for summary judgment, (2) denies defendant's motion for summary judgment based on the statute of limitations issue, and (3) grants plaintiff's motion for summary judgment. Any requests for findings and rulings not hereinabove specifically or inferentially granted are herewith denied.

SO ORDERED.