Kevin W. MURPHY, et al.,
Plaintiffs, Appellants,

v.

TIMBERLANE REGIONAL SCHOOL
DISTRICT, Defendant, Appellee.

No. 91–2272.

United States Court of Appeals,
First Circuit.

Heard June 5, 1992.

Decided Aug. 19, 1992.

Rehearing and Rehearing En Banc
Denied Oct. 15, 1992.

Michael R. Chamberlain with whom Chamberlain and Connor were on brief for plaintiffs, appellants.

Diane M. Gorrow with whom Gerald M. Zelin and Soule, Leslie, Zelin, Sayward and Loughman were on brief for defendant, appellee.

Before CYR, Circuit Judge, RONEY,* Senior Circuit Judge, and PIERAS,** District Judge.

---

* Of the Eleventh Circuit, sitting by designation.

** Of the District of Puerto Rico, sitting by designation.

RONEY, Senior Circuit Judge:

This case arises under the Individuals with Disabilities Education Act (Act), 20 U.S.C. § 1400 *et seq.* Kevin W. Murphy, along with his parents and guardians, Janice and Kevin C. Murphy, are seeking compensatory education for a two-year period during which Kevin received no special educational services. Both the administrative hearing officer and the United States District Court for the District of New Hampshire entered orders for defendant Timberlane Regional School District, ruling by way of summary judgment that the Murphys' compensatory education claim was barred by laches. Since the parents' delay in filing suit was not unreasonable and factual disputes remain concerning the school district's claim of prejudice, we vacate and remand to the district court for further proceedings.

The Act requires that to qualify for federal financial assistance, participating states must adopt policies assuring all students with disabilities the right to a "free appropriate public education." 20 U.S.C. § 1412(1). New Hampshire has adopted the required policies and attempts to comply with the requirements of the Act.

As defined by the Act, the term "free appropriate public education" refers to the special education and related services that must be provided in conformity with an individualized education program (IEP). 20 U.S.C. § 1401(a)(20). An IEP is a statement of the educational program which must be written for each child and designed to meet each child's unique needs. 20 U.S.C. § 1401(a)(19). The IEP is developed by a team including a qualified representative of the local educational agency, the teacher, the parents or guardian, and, where appropriate, the student. *Id.* In New Hampshire, this team is referred to as the Pupil Placement Team. The IEP must be reviewed at least annually and revised when necessary. 20 U.S.C. § 1414(a)(5). An IEP is appropriate under the Act if it provides instruction and support services which are reasonably calculated to confer educational benefits to the student. *Board of Education v. Rowley,* 458 U.S. 176, 203–07, 102 S.Ct. 3034, 3049–51, 73 L.Ed.2d 690 (1982); *Abrahamson v. Hershman,* 701 F.2d 223, 226–27 (1st Cir.1983).

The Act further requires states to establish and maintain certain procedures "to assure that children with disabilities and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education." 20 U.S.C. § 1415(a). Parents who believe that a proposed IEP is inappropriate are entitled to an impartial due process hearing. 20 U.S.C. § 1415(b)(2). Any party aggrieved by the decision of the administrative hearing officer may appeal to either state or federal court. 20 U.S.C. § 1415(e)(2).

Kevin W. Murphy was born on July 9, 1968. He is a disabled individual who is entitled to special educational services under the Act. Kevin's disabilities include spastic paraplegia, cortical blindness (difficulty processing visual stimuli), tactile agnosia (difficulty processing tactile input), and mild mental retardation.

In 1976, the Murphys moved to Plaistow, New Hampshire, which is in the Timberlane Regional School District (Timberlane or the district). In September 1981, Kevin was transferred from his previous placement to a special program at Charlotte Avenue School, a public elementary school in Nashua, New Hampshire. Although Kevin's parents had originally agreed to this new placement, they soon became concerned about the appropriateness of the placement, and expressed their objections to Kevin's teacher and to Timberlane's special education administrators. In December 1981, Kevin suffered a seizure at home, and his parents decided not to return Kevin to school after the winter break.

In January 1982, the school superintendent authorized the director of special education to provide tutorial services to Kevin in his home. A year later, the State De-

partment of Education strongly recommended that the district provide Kevin with home-based instruction. No such services were ever provided.

Mr. Murphy wrote letters to Timberlane in January and February 1982, notifying the school district of his decision to keep Kevin at home, complaining that Kevin was being denied an education, and threatening to bring an action against the district. Kevin remained at home throughout 1982 and 1983.

Between January 1982 and January 1984, numerous IEP meetings were held between Kevin's parents and district officials in an attempt to develop an appropriate program for Kevin. Although the parties' accounts of the facts differ on who was cooperative and who was obstinate, it is clear that there were a number of disagreements over the appropriateness of different proposed placements and evaluations. The Murphys rejected a number of IEPs presented to them by the district. In June 1982, Kevin attended school in a third grade classroom for the last two weeks of the school year. The purpose of this placement was to allow Timberlane an opportunity to evaluate Kevin and assess his needs so that an appropriate IEP could be developed for the following school year.

In November 1982, the district initiated truancy proceedings against Kevin's parents because of Kevin's absence from school. These proceedings were never completed. In January 1984, the Pupil Placement Team finally agreed on a placement for Kevin in the Get Set Program at Pinkerton High School. Although Kevin's May 1985 IEP indicated that Kevin might complete the Get Set Program as early as June 1987, Kevin remained in the program through the end of 1988–89 school year.

In May 1988, Kevin's Pupil Placement Team met to develop an IEP for the 1988–89 school year. Although Kevin would turn 21 in July 1989, there was evidence that the Team assumed that this was not the final IEP to be developed for Kevin and that Kevin would be permitted to continue his education until he completed the program at Pinkerton High School. In No-

vember 1988, Mr. Murphy met with Timberlane's Superintendent, Terrance Holmes, to discuss whether Timberlane would provide schooling beyond Kevin's 21st birthday. Mr. Holmes agreed to present Mr. Murphy's request to the School Board. On January 5, 1989, the Superintendent recommended to the School Board that Kevin be allowed to continue at Pinkerton High School beyond his 21st birthday. The Board rejected the recommendation by a vote of six to three.

Kevin turned 21 on July 9, 1989. On July 24, 1989, George Wright, Timberlane's local education agency representative and a member of Kevin's IEP team, wrote to Kevin's parents enclosing an Annual Statement of Placement discharging Kevin as a special education student. In August 1989, the Murphys appealed the discharge and requested an administrative hearing. The Murphys sought compensatory education for Kevin beyond the statutorily required age of 21 because of the district's failure to provide special education and related services from January 1982 through January 1984.

On February 27, 1990, an administrative hearing officer denied Timberlane's motion for summary judgment, rejecting the district's laches argument and applying a six-year statute of limitations. Upon the district's motion for reconsideration, the hearing officer reversed himself, and on April 23, 1990, found that laches barred the Murphys' claim. The parents appealed to the United States District Court for the District of New Hampshire. On August 26, 1991, that court ruled that compensatory education is available under the Act, but granted summary judgment for the district based on its laches defense. The court denied the Murphys' motion to reconsider and entered its judgment on October 31, 1991.

This circuit has not yet decided whether compensatory education is a permissible form of relief under the Act. Other circuits which have addressed the issue have allowed compensatory education, likening this form of relief to the reimbursement we permitted in *Town of Burlington v. De-*

*partment of Education*, 736 F.2d 773, (1st Cir.1984), *aff'd*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). Indeed, according to our research, every circuit which has addressed this issue since our decision in *Burlington* was affirmed by the Supreme Court has found that compensatory education is available under the Act. *See, e.g., Lester H. v. Gilhool*, 916 F.2d 865 (3d Cir.1990), *cert. denied sub nom. Chester Upland Sch. Dist. v. Lester H.*, — U.S. ——, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991); *Burr v. Ambach*, 863 F.2d 1071 (2d Cir.), *vacated and remanded sub nom. Sobol v. Burr*, 492 U.S. 902, 109 S.Ct. 3209, 106 L.Ed.2d 560 (1988), *reaff'd*, 888 F.2d 258 (2d Cir.1989), *cert. denied*, 494 U.S. 1005, 110 S.Ct. 1298, 108 L.Ed.2d 475 (1990); *Jefferson County Bd. of Educ. v. Breen*, 853 F.2d 853 (11th Cir.1988); *Miener v. State of Missouri*, 800 F.2d 749 (8th Cir.1986).

■ Assuming that compensatory education is available in this circuit, it, like reimbursement, is a form of equitable relief. *See Burlington*, 736 F.2d at 799, 801–02; *Jefferson County Bd. of Educ.*, 853 F.2d at 857–58. Thus equitable defenses are available to a claim for compensatory education.

■ The equitable doctrine of laches is an affirmative defense that serves as a bar to a claim for equitable relief "where a party's delay in bringing suit was (1) unreasonable, and (2) resulted in prejudice to the opposing party." *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir. 1989). *See Gutierrez v. Waterman Steamship Corp.*, 373 U.S. 206, 215, 83 S.Ct. 1185, 1191, 10 L.Ed.2d 297 *reh'g. denied*, 374 U.S. 858, 83 S.Ct. 1863, 10 L.Ed.2d 1082 (1963).

We reverse the district court's grant of summary judgment on the ground that the claimed is barred by laches for two reasons. *First*, the Murphys' delay in filing their claim was not so unreasonable as to make the laches defense available without a clear showing of prejudice. *Second*, summary judgment was improper because genuine issues of material fact remained

concerning Timberlane's assertion of prejudice.

■ We review the district court's application of laches for abuse of discretion. *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir.1989). The discretion of the district court, however, is confined by established standards. We have been unable to find any cases applying the laches doctrine to a claim brought under the Act, indicating that perhaps the doctrine should be applied sparingly to facilitate Congress' policy concerning the education of children with disabilities. *Cf. Park County Resource Council, Inc. v. United States Dept. of Agric.*, 817 F.2d 609, 617 (10th Cir.1987).

The district court found that the Murphys' delay in filing their claim for compensatory education was unreasonable because the parents kept Kevin out of school for two years; failed to cooperate with the school in 1982 and 1983; and waited approximately six years before seeking relief. *Murphy v. Timberlane Regional Sch. Dist.*, No. 90–265–D at 20–21 (D.N.H. Aug. 26, 1991).

Although the Murphys could have requested a due process hearing in late 1981 when they first felt that the education being provided by Timberlane was inappropriate, they chose instead to negotiate with the school in an attempt to secure an appropriate program for Kevin. The Murphys attended no less than six meetings between January and September 1982. Further, although the Pupil Placement Team had not yet agreed on a program for Kevin, the Murphys agreed to allow Kevin to attend school for a short period in June 1982 for the purpose of evaluating Kevin and determining his needs. Obviously, the Murphys were not sitting on their rights, but were attempting to resolve their differences with the school district without resorting to litigation.

Second, the Murphys' delay was not unreasonable because until the summer of 1989, the Murphys were not certain that the school district would end Kevin's education when he reached 21. Although the Act only requires school districts to provide free appropriate public education to stu-

dents between the ages of 3 and 21, it was not entirely unreasonable for the Murphys to postpone litigation with the hope that Timberlane would voluntarily provide additional education to compensate for Kevin's two years at home.

Third, we are troubled by Timberlane's attempt to fault the Murphys for their failure to file for a due process hearing when, although the parents are entitled to request a hearing if they disagree with an IEP, state regulations impose upon Timberlane not only the right, but the *obligation* to do the same. In New Hampshire, if the parents disagree with a proposed IEP and the local educational agency feels it would be in the best interest of the child to implement the IEP, the local agency is required to initiate administrative procedures to obtain permission from a hearing officer to implement the IEP. N.H.Code Admin.R.Ed. 1125.01(b)(3)-b.[1] No such procedures were ever initiated by Timberlane.

Finally, in what appears to be an attempt to persuade the court that the Murphys' delay in filing their claim was unreasonable, Timberlane has set forth in detail what it describes as the Murphys' obstructionism and obstinacy. While obstinacy on the part of the parents may be relevant to entitlement to relief and when fashioning the remedy, it has little to do with the doctrine of laches.

Even if the Murphys' delay had been unreasonable, however, the laches issue should not have been resolved on summary judgment. In reviewing the district court's grant of summary judgment, we should reverse "if we find that 'issues of fact which were adequately raised before the district court need to be resolved before the legal issues in the case may be decided.'" *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 895 (1st Cir.1988) (quoting *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 934 (1st Cir.1987)).

The district court's conclusion that the Murphys' delay in filing their claim prejudiced Timberlane was based on the following: because Kevin is now over 21 years of age, the state will not reimburse Timberlane for the costs associated with compensatory education; memories of witnesses from the 1981–83 period have faded; most of the principal actors from the 1981–83 period have left the jurisdiction of Timberlane; and in light of the posture of this case, no stay-put provision was in place, and Kevin has been out of any publicly funded educational system since 1989.

The circumstances cited by the district court do not provide a showing of prejudice sufficient to support summary judgment on the basis of laches. The laches doctrine may be invoked only where the prejudice to the defendant flows from the plaintiff's delay. *See Gutierrez v. Waterman Steamship Corp.*, 373 U.S. 206, 215–16, 83 S.Ct. 1185, 1191–92, 10 L.Ed.2d 297 *reh'g denied*, 374 U.S. 858, 83 S.Ct. 1863, 10 L.Ed.2d 1082 (1963); *Puerto Rican–American Ins. Co. v. Benjamin Shipping Co.*, 829 F.2d 281, 284 (1st Cir.1987); *Cruz v. Hauck*, 762 F.2d 1230, 1238 (5th Cir.1985). Two of the factors relied on by the district court have nothing to do with the Murphys' delay in filing their claim. Although it may be true that the state would not contribute to Timberlane's expenditures on compensatory education, that hardship is not attributable to the parents' delay. If the Murphys had sought and received a compensatory education award in 1984, Timberlane would still be required to bear the cost without assistance from the state. Similarly, any prejudice to Timberlane that might result from the fact that Kevin has been out of school throughout the course of these proceedings is not attributable to the parents' delay.

The two remaining factors upon which the district court relied also do not support

---

1. If the parent(s) inform the district of their disagreement, or if they failed to make a decision within a specified time frame, it shall be interpreted as disagreement with the decision or action proposed by the local school district's Special Education Evaluation/Placement Team. If the Local Education Agency feels its action or decision should, in the best interests of the student, be implemented, the Local Education Agency shall initiate its right of due process as specified in the *Complaint and Impartial Due Process Hearing Procedures* Section of the *Standards* to obtain the authority to implement its decision.

   N.H.Code Admin.R.Ed. 1125.01(b)(3)–b.

a grant of summary judgment. First, there was no evidence before the district court that the memories of witnesses had failed. Second, the district court's finding that key witnesses were unavailable was premature. Timberlane measures unavailability by reference to the subpoena power of the administrative agency. Although it may be true that the hearing officer could not have compelled the attendance of some of these witnesses, the subpoena power of federal courts is not as limited. *See* Fed. R.Civ.P. 45(b). There was no showing that the presence of these witnesses could not have been compelled by the district court or that the key witnesses are actually unavailable even if they are beyond the court's subpoena power. Although Timberlane identified four principal actors which it claimed were unavailable, the Murphys point to evidence in the record calling into doubt the school's assertion of unavailability. In light of these unresolved issues of fact, the district court's grant of summary judgment to Timberlane must be set aside. *See Lipsett v. University of Puerto Rico*, 864 F.2d 881 (1st Cir.1988).

*Vacated and Remanded.*