USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1828 KEVIN W. MURPHY, ETC., ET AL. Plaintiffs, Appellees, v. TIMBERLANE REGIONAL SCHOOL DISTRICT, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Shane Devine, Senior U.S. District Judge] __________________________ ____________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Gerald M. Zelin, with whom Diane M. Gorrow and Soule, Leslie, _______________ _______________ _______________ Zelin, Sayward and Loughman were on brief for appellant. ___________________________ Ellen J. Shemitz, with whom Michael R. Chamberlain and ___________________ _________________________ Chamberlain and Connor were on brief for appellees. ______________________ ____________________ April 28, 1994 ____________________ CYR, Circuit Judge. Plaintiffs-appellees Kevin W. CYR, Circuit Judge. ______________ Murphy (Kevin) and his parents, Janice and Kevin C. Murphy, brought this action under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. 1400 et seq.,1 to compel __ ____ defendant-appellant Timberlane Regional School District (Timber- lane) to provide Kevin with compensatory education for the two-year period during which he received no educational services due to the failure of the parties to agree upon an appropriate individual educational plan (IEP). The district court ultimately granted summary judgment against Timberlane, and Timberlane appealed. We affirm the district court judgment. I I BACKGROUND BACKGROUND __________ After incurring an accident-induced disability at an early age, Kevin was determined a disabled individual entitled to special educational services under the IDEA.2 Several years ____________________ 1The IDEA formerly was known as the Education of the Handicapped Act. See Pub. L. 102-119, 25(b), Oct 7, 1991, 105 ___ Stat. 607 (substituting "Individuals with Disabilities Education Act" for "Education of the Handicapped Act"). 2We relate only the background necessary to an understanding of this appeal. For greater detail, see Murphy v. Timberlane ______ __________ Regional Sch. Dist., 973 F.2d 13, 14-15 (1st Cir. 1992) (vacating ___________________ summary judgment against the Murphys) ("Murphy I"). ________ As the court explained in Murphy I: ________ [The IDEA] requires . . . participating states [to] adopt policies assuring all students with dis- abilities the right to a "free appropriate public 2 later, the Murphy family moved to Plaistow, New Hampshire, which is within the Timberlane Regional School District. In September 1981, Timberlane placed Kevin in a special educational program at Charlotte Avenue School, a public elementary school in Nashua, New Hampshire. Although Kevin's parents originally agreed to this placement, they soon expressed concerns to his teacher and to Timberlane's special education administration that Kevin was regressing academically. In December 1981, after Kevin suffered ____________________ education." 20 U.S.C. 1412(1). New Hampshire has adopted the required policies and attempts to comply with the requirements of the Act. As defined by [the IDEA], the term "free appro- priate public education" refers to the special educa- tion and related services that must be provided in conformity with an individualized education program (IEP). 20 U.S.C 1401(a)(20). An IEP is a statement of the educational program which must be written for each child and designed to meet each child's unique needs. 20 U.S.C 1401(a) (19). The IEP is developed by a team including a qualified representative of the local educational agency, the teacher, the parents or guardian, and, where appropriate, the student. Id. ___ . . . An IEP is appropriate under [the IDEA] if it provides instruction and support services which are reasonably calculated to confer educational benefits to the student. Board of Education v. Rowley, 458 U.S. ___________________ ______ 176, 203-207 (1982); Abrahamson v. Hershman, 701 F.2d __________ ________ 223, 226-27 (1st Cir. 1983). [The IDEA] further requires states to establish and maintain certain procedures "to assure that chil- dren with disabilities and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education." 20 U.S.C. 1415(a). Parents who believe that a pro- posed IEP is inappropriate are entitled to an impartial due process hearing. 20 U.S.C. 1415(b)(2). Any party aggrieved by the decision of the administrative hearing officer may appeal to either state or federal court. 20 U.S.C. 1415(e)(2). Murphy I, 973 F.2d at 14. ________ 3 a seizure at home, his parents decided not to return him to school. Kevin received no educational services from Timberlane between January 1982 and January 1984, the two-year period to which the compensatory education claim at issue in this case relates. Finally, in January 1984, after a great many meetings and an abortive truancy proceeding against Kevin's father, the parties came to an agreement on Kevin's placement at Pinkerton High School, where he remained through the 1988-89 school year.3 In the fall of 1988, Mr. Murphy and Timberlane offi- cials had discussions concerning continuation of Kevin's special education beyond his twenty-first birthday on July 9, 1989. Mr. Murphy later signed Kevin's 1988-89 IEP with the understanding that Kevin would be provided special educational services beyond age twenty-one. On January 5, 1989, however, the Timberlane school board rejected a request by the Timberlane superintendent to fund continued special education for Kevin. On July 24, 1989, shortly after Kevin's twenty-first birthday, George Wright, Timberlane's representative on Kevin's IEP team, notified the Murphys that Kevin would be discharged as a special education student. Kevin is now twenty-five years of age and no longer entitled to a free public education under New Hampshire law. See ___ N.H. Rev. Stat. Ann. 186-C:9 (disabled "child shall be entitled to continue in an approved program until such time as the child ____________________ 3Although briefly placed in two different schools for evaluation, in June 1982 and October-November 1983, Kevin was not returned to a permanent educational setting until January 1984. 4 has acquired a high school diploma or has attained the age of 21, whichever occurs first"); see also id. 186-C:2 (similar). In ___ ____ ___ August 1989, less than one month after Kevin had been discharged, the Murphys requested an administrative hearing. The Murphys maintained that Kevin was entitled to compensatory educational services beyond age twenty-one as a consequence of Timberlane's failure to provide special education during the two-year period from January 1982 through January 1984. The Murphys specifically alleged that Timberlane had violated the IDEA by failing either to propose an IEP acceptable to all IEP team members or to initiate administrative proceedings to resolve the IEP impasse in accordance with N.H. Code Admin. R. Ed. 1125.01(b)(3)-b ("section 1125").4 The administrative hearing officer determined that the Murphys' claim for compensatory educational services was barred by laches. The United States District Court for the District of New Hampshire granted summary judgment in favor of Timberlane, affirming the administrative decision. We vacated the district ____________________ 4Section 1125 states: If the parent(s) inform the district of their disagree- ment, or if they fail to make a decision within the specified time frame, it shall be interpreted as dis- agreement with the decision or action proposed by the local school district's Special Education Evalua- tion/Placement Team. If the Local Education Agency __ ___ _____ _________ ______ feels its action or decision should, in the best inter- _____ ___ ______ __ ________ ______ ests of the student, be implemented, the Local Educa- __ ___________ ___ _____ ______ tion Agency shall initiate its right of due process as ____ ______ _____ ________ ___ _____ __ ___ _______ specified in the Complaint and Impartial Due Process Hearing Procedures Section of the Standards to obtain the authority to implement its decision. (emphasis added). 5 court decision and remanded for further findings relating to the laches defense. Murphy I, 973 F.2d at 18. On remand, after ________ receiving evidence and argument on both the laches defense and the cross-motions for summary judgment, the district court rejected Timberlane's laches defense, denied its motion for summary judgment based on a statute of limitations defense, and granted summary judgment for the Murphys. Murphy v. Timberlane ______ __________ Regional Sch. Dist., 819 F. Supp. 1127 (D.N.H. 1993) ("Murphy ____________________ ______ II"). Timberlane appeals the district court order. __ II II DISCUSSION DISCUSSION __________ A. Laches A. Laches ______ When Timberlane's laches defense was before us in 1992, we explained that "[t]he equitable doctrine of laches is an affirmative defense that serves as a bar to a claim for equitable relief 'where a party's delay in bringing suit was (1) unreason- able, and (2) resulted in prejudice to the opposing party.'" Murphy I, 973 F.2d at 16 (quoting K-Mart Corp. v. Oriental Plaza, ________ ____________ _______________ Inc., 875 F.2d 907, 911 (1st Cir. 1989)). We went on to hold ____ that "the Murphys' delay in filing their claim was not so un- reasonable as to make the laches defense available without a _______ _ clear showing of prejudice." Id. (emphasis added). On remand, _____ _______ __ _________ ___ the district court found that the delay had not prejudiced Timberlane's ability to present its case as a result of the unavailability or failed memories of key witnesses. Murphy II, _________ 819 F. Supp. at 1133. Our review reveals no abuse of discretion 6 by the district court. See K-Mart Corp., 875 F.2d at 911.5 ___ ____________ Timberlane represented to the district court that "most of the primary actors" from the relevant period were unavailable, and that the "memories of critical witnesses had failed." However, two of these "primary" witnesses (Kevin's teachers: Martha Kadel and Claudia Libis) testified at the district court _________ hearing. A third key witness, Nikolas Sarbanis, resides within the reach of the district court's subpoena power, yet Timberlane did not produce him. Timberlane rested its "prejudice" showing relating to the other "primary" witness, former Timberlane Superintendent Robert Crompton, solely on its unsupported asser- tion that he was unavailable. The district court received testimony, however, that Crompton resides in Florida, and Timber- lane made no proffer that he was either unable or unwilling to testify. See Hoover v. Department of Navy, 957 F.2d 861, 864 ___ ______ __________________ (Fed. Cir. 1992) (noting that "prejudice" showing must be sup- ported by "substantial evidence" and holding, on similar facts, that this burden "is not met simply by showing that a potential witness has retired" outside the subpoena power of the court.) Moreover, Timberlane did not assert, let alone show, that Cromp- ton's testimony would not be available by deposition. See, e.g., ___ ____ Fairfield 274-278 Clarendon Trust v. Dwek, 970 F.2d 990, 994-95 __________________________________ ____ ____________________ 5Because the district court conducted a preliminary hearing at which the parties were allowed to present evidence, see Fed. ___ R. Civ. P. 12(d), "abuse of discretion" is the appropriate standard of review, see Rivera-Gomez v. de Castro, 900 F.2d 1, 2- ___ ____________ _________ 3 (1st Cir. 1990), notwithstanding that the laches defense originally was raised on motion for summary judgment. 7 (1st Cir. 1992) (explaining requirements for the introduction of deposition testimony when witnesses are unavailable, pursuant to Fed. R. Civ. P. 32(a)(3)). The district court further found that Timberlane had failed to take reasonable steps to refresh its witnesses: At the [district court] hearing, [six Timberlane witnesses] testified on . . . direct examination as to aspects of their involvement with Kevin's special education program which they could not remember. On . . . cross-examination [by the Murphys' counsel], however, each acknowledged that [Timberlane] had not shown them relevant documents contained in the record of the instant case, such as transcripts of signifi- cant meetings concerning Kevin. Murphy II, 819 F. Supp. at 1133. _________ After reviewing the entire hearing transcript with care, we are persuaded that the rejection of Timberlane's claim of prejudice was well within the district court's sound discre- tion. See K-Mart Corp., 875 F.2d at 912; see also Kersey v. ___ ____________ ___ ____ ______ Dennison Mfg. Co., 3 F.3d 482, 486 (1st Cir. 1993) (abuse of __________________ discretion occurs "'when a relevant factor deserving of signifi- cant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales.'") (quoting United States v. ______________ Roberts, 978 F.2d 17, 21 (1st Cir. 1992)) (citations omitted). _______ B. The Timberlane Motion for Summary Judgment B. The Timberlane Motion for Summary Judgment __________________________________________ Following the evidentiary hearing on its laches defense, Timberlane moved for summary judgment on the ground that 8 the present action is time-barred. Reasoning from the absence of an express limitation provision in both the IDEA and the im- plementing New Hampshire statute, see N.H. Rev. Stat. Ann. 186- ___ C,6 the district court ruled that laches alone could provide a temporal limitation on the Murphys' compensatory education claim. Murphy II, 819 F. Supp. at 1132. We conclude that the compensa- _________ tory education claim was not time-barred under the New Hampshire limitation provision appropriate for "borrowing" in the present case. See Garside v. Osco Drug, Inc., 895 F.2d 46, 49 (1st Cir. ___ _______ ________________ 1990) ("court of appeals [may] affirm a judgment on any indepen- dently sufficient ground"). (i) The "Borrowing" Methodology (i) The "Borrowing" Methodology ___________________________ The Supreme Court has described the federal "borrowing" praxis in broad terms: "[w]hen Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 266-67 (1985) ( 1983 action). ______ ______ See also Campbell v. Haverhill, 155 U.S. 610, 616 (1895) (absent ___ ____ ________ _________ federal limitation, congressional intent is best served if the federal right is "enforced in the manner common to like actions" under state law); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194, _______ ____________________ 198 (1st Cir. 1987) (borrowing N.H. RSA 508:4 six-year limita- ____________________ 6New Hampshire has since adopted a limitations scheme specifically applicable to special education claims. See N.H. ___ Rev. Stat. Ann. 186-C:16-b (effective June 30, 1992). 9 tion on "personal actions" for application to 1981 action). In selecting the appropriate state limitation, Campbell and its ________ progeny require the borrowing court to balance both the interests of the parties and the legislative goals of the particular federal statute. See Amann v. Town of Stow, 991 F.2d 929, 931-33 ___ _____ ____________ (1st Cir. 1993) (borrowing administrative review limitation period after balancing three IDEA policy goals: the parental interest in participation, the school's interest in speedy resolution of disputes, and the child's interest in receiving educational entitlement). Similarly, the Sixth Circuit has observed that: [T]he nature of actions that can be brought under the [IDEA] as well as the Act's goal of proper education of the handicapped child make the selection of state limitations periods on a case-by-case basis an imperative. The individual case must be characterized by considering the facts, the circumstances, the posture of the case and the legal theories presented. Janzen v. Knox County Bd. of Educ., 790 F.2d 484, 487 (6th Cir. ______ _________________________ 1986) (citation omitted); see Bow Sch. Dist. v. Quentin W., 750 ___ ______________ ___________ F. Supp. 546, 549 (D.N.H. 1990) (similar) (Stahl, J.); see also ___ ____ Tokarcik v. Forest Hills Sch. Dist., 665 F.2d 443, 449 (3d Cir. ________ _______________________ 1981) ("Ultimately, we must be guided by the aim of the [IDEA] in devising the limitation period in issue here. If state limita- tions law conflicts with federal procedural safeguards embodied in [the IDEA], the federal concerns are paramount."), cert. _____ denied, 458 U.S. 1121 (1982). ______ (ii) The Compensatory Education Claim (ii) The Compensatory Education Claim ________________________________ 10 First, we must attempt to "characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle." Wilson, 471 ______ U.S. at 268. The present IDEA claim seeks to vindicate Kevin's "right to a free appropriate public education," 20 U.S.C. 1412- (1); see also 20 U.S.C. 1412(2)(b), based on the contention ___ ____ that Kevin was deprived of educational services for two years while Timberlane, contrary to its mandated duty under section 1125, failed to resort to the New Hampshire administrative process to resolve the impasse between Timberlane and the Murphys as to what constituted an "appropriate education." See generally ___ _________ Honig v. Doe, 484 U.S. 305, 310 (1988) (finding IDEA "confers _____ ___ upon disabled children an enforceable substantive right to public education"). The Murphys request equitable relief in the form of an injunction compelling Timberlane to provide Kevin with two years of compensatory special education. The peculiar procedural warp presented in this case seems to us sufficiently important to qualify as a defining feature of the limitation to be borrowed from New Hampshire law. The administrative hearing officer initially ruled that the Murphys' hearing application was timely under the New Hampshire statute of limitations governing "personal actions" in general, see N.H. Rev. Stat. Ann. 508:4, and therefore that the compen- ___ satory education claim should be addressed on the merits. Later, on reconsideration, the hearing officer ruled that the compensa- tory education claim was barred by laches. The Murphys filed a 11 timely appeal to the district court from the administrative ruling on laches pursuant to 20 U.S.C. 1415(e)(2), and the district court upheld the administrative ruling. On appeal, we vacated the district court decision and remanded to the district court for further proceedings. Murphy I, 973 F.2d at 18. ________ The district court convened an evidentiary hearing on laches, and presumably in light of the circumstances of the case Kevin was approaching his mid-twenties by this point, the litigation had been pending for more than three years, and an extensive district court evidentiary record had already been generated the district court decided to adjudicate the Mur- ___ ________ _____ _______ __ __________ ___ ____ phys' compensatory education claim on the merits rather than _____ ____________ _________ _____ __ ___ ______ remand to the administrative hearing officer. See 20 U.S.C. ___ 1415(e)(2) (courts sitting in review of administrative rulings may supplement the hearing record with additional evidence); Pihl ____ v. Massachusetts Dept. of Educ., 9 F.3d 184, 191 (1st Cir. 1993) ____________________________ (remand to administrative hearing officer may not be required where the record contains sufficient factual development and the "peculiar expertise" of a hearing officer is not required). Neither party opposed the district court's decision to address the merits. Thus, the instant appeal challenges the district court order allowing the compensatory education claim on the merits. This tortuous procedural trail is material to the present inquiry in at least two significant respects. First, in contradistinction to the "typical" IDEA action, this case does 12 not concern the appropriate limitation to be applied to an appeal from a state administrative ruling to a federal district court under 20 U.S.C. 1415(e)(2), but to the initiation of a request for an "impartial due process" administrative hearing under 20 U.S.C. 1415(b)(2) in the first instance. Compare, e.g., Amann, __ ___ _____ ________ _______ ____ _____ 991 F.2d at 933-34 (importing 30-day limitation from Massachu- setts Administrative Procedure Act in 1415(e)(2) case); Bow, ___ 750 F. Supp. at 550-51 (similar, applying 30-day New Hampshire administrative review limitation).7 Second, we believe that several factors which militate in favor of borrowing an abbrevi- ated limitation period for application in the context of an appeal from an administrative ruling under section 1415(e)(2) are inapposite in the present context. For instance, where a party seeks administrative review in order to resolve an ongoing IEP _______ impasse, the need for a speedy resolution securing the eligible ______ child's IDEA entitlement at the earliest possible time must be considered a dominant IDEA policy objective. Amann, 991 F.2d at _____ 932. The present action, on the other hand, concerns a claim for compensatory education based exclusively on a course of conduct already concluded, and thus does not implicate an equivalent need _________ for urgent administrative intervention. Furthermore, whereas the limitation borrowed in this case will govern whether the Murphys' ____________________ 7The thirty-day limitation borrowed in Bow appears to have ___ been supplanted by a newly enacted limitation scheme, applicable exclusively in the special education context. The new provision prescribes a 120-day limitation on any "appeal from a final administrative decision in a special education due process hearing to a court of competent jurisdiction." N.H. Rev. Stat. Ann. 186-C:16-b IV. 13 compensatory education claim can ever be considered by any __ ___ tribunal in the first instance, in a section 1415(e)(2) proceed- ________ __ ___ _____ ________ ing the district court normally functions something like an appellate court reviewing a state agency decision on the merits. Bow, 750 F. Supp. at 549. Consequently, the statute of limita- ___ tions defense interposed by Timberlane would not merely preclude a judicial "second look" at an adverse administrative ruling, but foreclose any ruling, administrative or judicial, on Timberlane's ___ ______ ______________ __ ________ legal responsibility for the otherwise irretrievable two-year IDEA educational entitlement denied Kevin. Thus, the broad equitable considerations and finality concerns generated by the present action where absent a compensatory education award there can be no "next year" for the disabled individual no longer eligible for free public education are not ordinarily involved in an appeal to the district court under section 1415(e)(2). Compare Amann, 991 F.2d at 933 (hold- _______ _____ ing short limitation period appropriate, in part because parents can always contest next year's proceedings if need be). We think ____ ______ these considerations bear out the view endorsed by the Bow court ___ that "[n]othing prevents different provisions of a federal statute from being characterized differently for statute of limitation purposes." Bow, 750 F. Supp. at 549, citing Wilson, ___ ______ ______ 471 U.S. at 268. Under the required "borrowing" methodology, therefore, we weigh the federal interests manifest in the IDEA, the state and school district interests implicit in section 1125, and the interests of the learning disabled pupil and his family, 14 all in light of the particular procedural posture and equitable considerations disclosed in the present record. (iii) The Appropriate New Hampshire Limitation (iii) The Appropriate New Hampshire Limitation ________________________________________ Timberlane advocates borrowing the four-year limitation applicable to "Actions to Recover For Bodily Injury" against local governmental units, including school districts. See N.H. ___ Rev. Stat. Ann. 507-B:7 ("RSA 507-B:7") (amended to three-year period, effective in actions arising after May 17, 1989). An alternate candidate is the New Hampshire statute of limitations which formerly prescribed a six-year limitation on "personal actions" accruing prior to July 1, 1986. N.H. Rev. Stat. Ann. 508:4 ("RSA 508:4") (amended to three-year period, effective in actions arising after July 1, 1986). As the present cause of action accrued before RSA 508:4 and RSA 507-B:7 were amended, see ___ infra p. 21, the pre-amendment versions govern. See Gonsalves v. _____ ___ _________ Flynn, 981 F.2d 45, 47-48 (1st Cir. 1992) (noting that federal _____ "borrowing" court will respect state law provision prescribing exclusively prospective application of amendatory limitation), citing Kadar Corp. v. Milbury, 549 F.2d 230, 234 n.3 (1st Cir. ______ ___________ _______ 1977). We think it clear that RSA 507-B:7 does not meet the threshold "like action" test, see Campbell, 155 U.S. at 616, ___ ________ because it applies only in actions "to recover for bodily injury, personal injury, or property damage caused by" fault attributable to a governmental unit. N.H. Rev. Stat. Ann. 507-B:2. The New Hampshire Supreme Court has observed: "Taken as a whole, the law 15 [RSA 507:B] seems designed to limit municipal liability arising from tort suits and related personal property claims . . . ." Cannata v. Deerfield, 566 A.2d 162, 167 (N.H. 1989). The Mur- _______ _________ phys' compensatory education claim, on the other hand, is pre- mised on allegations that Timberlane denied Kevin's federal statutory rights by withholding all special education services for a two-year period in violation of the IDEA and section 1125, the New Hampshire implementing regulation.8 Moreover, certain extraordinary characteristics of the present compensatory education claim point up the appropriateness of the New Hampshire catch-all limitation applicable to "personal actions" generally. Prior to its amendment in 1986, RSA 508:4 stated: "Except as otherwise provided by law, all personal ______ __ _________ ________ __ ___ actions, except actions for slander or libel, may be brought only within 6 years of the time the cause of action accrued." Al- though we have found no precise definition of the term "personal actions," the New Hampshire Supreme Court often has described RSA 508:4 as a "general statute of limitations," see, e.g., Petition ___ ____ ________ of Keene Sentinel, 612 A.2d 911, 914 (N.H. 1992); Clark v. Exeter _________________ _____ ______ Co-operative Bank, 344 A.2d 5, 5 (N.H. 1975). Further, the __________________ opening proviso "[e]xcept as otherwise provided by law" ____________________ 8Even if the present claim were somehow considered tort- based, the required "borrowing" methodology does not encourage recourse to state limitations tailored to curtail public liabili- ty. See, e.g., Wilson, 471 U.S. at 279 (noting, in context of ___ ____ ______ 1983 action, that "the very ineffectiveness of state remedies" may have motivated Congress to impose a federal enforcement scheme against state actors); cf. Rowlett, 832 F.2d at 198 ___ _______ (borrowing N.H. RSA 508:4 for 1981 claim). 16 strongly suggests that RSA 508:4 is meant to serve as a "back- stop" limitation on civil actions not governed by some more particular limitation. Compare, e.g., N.H. Rev. Stat. Ann. _______ ____ 507-C:4 (providing two-year limitation on actions for "medical injury"); N.H. Rev. Stat. Ann. 508:4-B (providing eight-year limitation on actions for "damages from construction"). As an IDEA-based claim for compensatory education is similar to a civil rights action, the "borrowing" praxis also may be informed by relevant principles developed in the context of civil actions under 42 U.S.C. 1981 and 1983. The Supreme Court has identified a general preference for borrowing state limitations governing personal injury actions, Wilson, 471 U.S. ______ at 279 ( 1983 action), in part because "[i]t is most unlikely that the period of limitations applicable to [personal injury actions] ever was, or ever would be, fixed in a way that would discriminate against federal claims, or be inconsistent with __ __ ____________ ____ federal law in any respect." Id. (emphasis added). Under this _______ ___ __ ___ _______ ___ criterion, as between RSA 507-B:7 and RSA 508:4 the statute of limitations governing personal actions generally RSA 508:4 presents the more analogous New Hampshire statute under the "like action" test established in Campbell, 155 U.S. at 616, hence the ________ more appropriate for application to the IDEA claim for compensa- tory education in the present case.9 Cf. Lillios v. Justices of ___ _______ ____________ ____________________ 9See James v. Nashua Sch. Dist., 720 F. Supp. 1053, 1058 ___ _____ __________________ (D.N.H. 1989). The James court borrowed RSA 508:4 for applica- _____ tion to a claim for attorney fees in an IDEA action. As the Murphys seek to enforce a substantive federal right rather than a derivative fee-shifting provision, however, the RSA 508:4 limita- 17 New Hampshire Dist. Court, 735 F. Supp. 43, 48 & n.9 (D.N.H. __________________________ 1990) (RSA 508:4 provides limitation applicable to 1983 actions brought in New Hampshire).10 We next consider whether borrowing RSA 508:4 comports with the purposes underlying the IDEA and the New Hampshire implementing regulation. See Wilson, 471 U.S. 266-67; Bow, 750 ___ ______ ___ F. Supp. at 551. The central purpose of the IDEA is to secure special educational entitlements to eligible recipients. See 20 ___ U.S.C. 1400(b)(9) ("it is in the national interest that the Federal Government assist State and local efforts to provide programs to meet the educational needs of handicapped children in order to assure equal protection of the law"). Likewise, in the present context the borrowing praxis must take into account the central importance of the IDEA's procedural overlay. As the Supreme Court has observed, procedure is at the very core of the IDEA: It seems to us no exaggeration to say that Congress placed every bit as much emphasis on compliance with procedures giving parents and guardians a large measure of participation . . . as it did upon the measurement of the resulting IEP against a substantive standard. Board of Educ. v. Rowley, 458 U.S. 176, 205-206 (1982); accord _______________ ______ ______ W.G. v. Board of Trustees, 960 F.2d 1479, 1484 (9th Cir. 1992) ____ _________________ ____________________ tion is even more suitable for borrowing in the instant action on general policy grounds. 10We need not address any impact that amended RSA 508:4 (three-year period), or newly enacted RSA 186-C:16-b, may have either on the present analysis or on earlier case law relating to "borrowing" in civil rights actions under 42 U.S.C. 1981 and 1983. 18 (noting centrality of implementing procedure to IDEA statutory scheme); Mrs. C. v. Wheaton, 916 F.2d 69, 72-73 (2d Cir. 1990) _______ _______ (same). The core role of procedure in the IDEA setting is well illustrated by Timberlane's failure to initiate the required administrative proceedings, see N.H. Code Admin. R. Ed. 1125.01- ___ (b) (3)-b; supra note 4, to end the IEP impasse in this case. _____ While parents and school officials dithered and debated, a disabled child with special educational needs lost day after irreplaceable day of educational opportunity mandated by law. We cannot overlook the reality that a central federal policy underlying the IDEA, and an important feature of the IDEA- implementing scheme adopted in New Hampshire, have both been blunted. Thus, absent a more particular limitation applicable to this extraordinary compensatory education claim, we think it appropriate to borrow the New Hampshire catch-all limitation applicable to personal actions generally.11 In addition, the more abbreviated the limitation on compensatory education claims the greater the disincentive to ____________________ 11The availability of compensatory education as a remedy under the IDEA the one form of IDEA relief that holds any potential for redressing this deprivation has only recently been recognized in this Circuit, see Pihl, 9 F.3d at 187-89; and ___ ____ only a year earlier in the District of New Hampshire, Manchester __________ Sch. Dist. v. Christopher B., 807 F. Supp. 860, 867-88 (D.N.H. ___________ ______________ 1992). The first reported court of appeals case to recognize a compensatory education claim is Miener v. Missouri, 800 F.2d 749, ______ ________ 753 (8th Cir. 1986). Thus, the recency and novelty of the compensatory education remedy likewise suggest that the catch-all limitation prescribed in RSA 508:4 is most suitable for borrowing. 19 parents to shed an adversarial posture and get on with the business of cooperating with school officials to further the special-education needs of the child. See David D. v. Dartmouth ___ ________ _________ Sch. Comm., 775 F.2d 411, 424 (1st Cir. 1985) (IDEA embodies ___________ preference for educational decisions arrived at through "good- faith cooperation and negotiation among the parties"); see also ___ ____ Murphy I, 973 F.2d at 16 ("Obviously, the Murphys were not _________ sitting on their rights, but were attempting to resolve their differences with the school district without resorting to litiga- tion."). The resultant undermining of section 1125 would be particularly erosive of IDEA policy in New Hampshire. Once the IEP negotiations had remained at an impasse for a reasonable period of time, i.e., not long into the two-year period during ____ which he received no special education, the onus was on Timber- lane to obtain administrative approval to implement the IEP it considered appropriate for Kevin. See supra note 4. ___ _____ Finally, as noted above, most IDEA cases involve the borrowing of state statutes of limitations for application to judicial appeals from administrative decisions. See Amann, 991 ___ _____ F.2d at 931 (collecting administrative review cases borrowing limitations ranging from thirty days to three years); Bow, 750 F. ___ Supp. at 548 (similar). Careful research discloses but one case, Hall v. Knott County Bd. of Educ., 941 F.2d 402 (6th Cir. 1991), ____ _________________________ cert. denied, 112 S.Ct. 982 (1992), involving a compensatory _____ ______ education claim even roughly analogous to the Murphy claim. The blind twenty-seven-year-old plaintiff in Hall brought an IDEA ____ 20 action challenging the appropriateness of the special educational _______________ services provided to her by the defendant school district between five and ten years earlier. Id. at 404-06. The Hall court ___ ____ assumed, arguendo, that a five-year limitation applied, but found ________ the action time-barred in any event because it could not have accrued less than six years before the complaint was filed. Id. ___ at 408-09. Although Hall is distinguishable from the present ____ action on a number of grounds, the most cogent distinction is that the present dispute involves a total denial of all special _____ education services for an extended period of time, not merely a challenge to the appropriateness of special education services _______________ provided years earlier. Revisiting the appropriateness of _______________ special education services actually provided in school years long since passed may indeed be an exercise of "extremely limited utility," as has been suggested, see Bow, 750 F. Supp. at 550, ___ ___ but given the totality of the present deprivation the effort to evaluate the merits of the compensatory education claim in this case is both useful and far less problematic. (iv) Accrual (iv) Accrual _______ We turn now to the question of accrual, which is governed by federal law. Hall, 941 F.2d at 408; G.D. v. West- ____ ____ _____ moreland Sch. Dist., 783 F. Supp. 1532, 1535 (D.N.H. 1992) _____________________ (same); cf. Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353 ___ _______________ _____________ (1st Cir. 1992) (same, 1983 case). "The general rule under federal law is said to be that [IDEA] claims 'accrue when the parents know or have reason to know of the injury or event that 21 is the basis for their claim.'" Hall, 941 F.2d at 408 (quoting ____ Judith W. Wegner, Educational Rights of Handicapped Children, 17 ___________________________________________ J. of L. & Educ. 625, 654 (1988)). As with the methodology for borrowing a limitation from state law, no mechanical formula controls the accrual determina- tion: "Where a statute does not indicate when a cause of action accrues, the court must 'keep[] in mind the purpose of the [Act] and the practical ends to be served by a period of limitations.'" G.D., 783 F. Supp. at 1535 (alterations in original, quoting ____ Albert v. Maine Cent. R.R., 905 F.2d 541, 543 (1st Cir. 1990)). ______ ________________ Pinpointing accrual in the present case would pose a complex question, inasmuch as the Murphys' action challenges an entire course of conduct by Timberlane. Compare, e.g., Amann, _______ ____ _____ 991 F.2d at 933-34 (involving an appeal from an administrative decision and noting under Massachusetts law that limitation runs from "receipt of notice of final decision"); G.D., 783 F. Supp. ____ at 1535-36 (similar, N.H. law). We need not fix the precise date of accrual, however, since the Murphys' claim unquestionably accrued within the six-year period preceding their request for administrative review on August 20, 1989. Thus, the request for administrative review was timely whether accrual occurred in October of 1983 upon Kevin's initial trial placement at the Pinkerton school (as Timberlane urged below), or at the time he was permanently placed in January of 1984 (as the Murphys claimed), or at some intermediate time. Moreover, from whatever point in time within the two-year period the Murphys might be 22 found to have known (or had reason to know) either of "the injury or the event that is the basis for their [compensatory education] claim," Hall, 941 F.2d at 408, Timberlane remained in continuous ____ violation of its section 1125 obligation to pursue an administra- tive resolution to the IEP stalemate. Consequently, we conclude that Timberlane's ongoing failure to comply with section 1125 throughout the relevant portion of the two-year period constitut- ed a unitary violation under the IDEA and the New Hampshire implementing regulation. C. The Murphy Motion for Summary Judgment C. The Murphy Motion for Summary Judgment ______________________________________ As a threshold matter, two arguments advanced by Timberlane on the merits have been foreclosed by our recent decision in Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184 (1st ____ ____________________________ Cir. 1993), recognizing a compensatory education claim under the IDEA, id. at 187-89, notwithstanding that the student was beyond ___ the eligible age for a free education under state law, id. at ___ 189-90. Thus, two further issues remain unaddressed. 1. Section 1125 1. Section 1125 ____________ The district court held Timberlane liable for failing to fulfill its section 1125 responsibility either to present an acceptable IEP or seek administrative enforcement. The district court simply applied our own straightforward construction of section 1125: In New Hampshire, if the parents disagree with a proposed IEP and the local educational agency feels it would be in the best interest of the child to implement the IEP, the local 23 agency is required to initiate administrative ________ procedures to obtain permission from a hear- ing officer to implement the IEP. N.H. Code Admin. R. Ed. 1125.01(b)(3)-b. No such pro- __ ____ ____ cedures were ever initiated by Timberlane. _______ ____ ____ _________ __ __________ Murphy I, 973 F.2d at 17 (footnote omitted & emphasis added). ________ Under section 1125, the school district must take the initiative to ensure that intransigence and foot-dragging in the IEP pro- cess, whether bureaucratic or parental, do not indefinitely compromise the child's right to a free and appropriate public education. See, e.g., W.G., 960 F.2d at 1486 (parental conduct ___ ____ ____ does not waive responsibility of school district); Town of ________ Burlington v. Department of Educ., 736 F.2d 773, 795 (1st Cir. __________ ___________________ 1984) (same), aff'd, 471 U.S. 359 (1985). _____ Timberlane's primary argument on appeal is that an IDEA claim, a federal cause of action, cannot be premised on a viola- _______ tion of a state administrative regulation.12 Its argument _____ overlooks the IDEA framework and our case law. The IDEA invests expansive discretion in the states to structure implementing procedures and enforcement mechanisms, thereby constructively incorporating duly promulgated state regulations: ____________________ 12Timberlane also argues that section 1125 is invalid because it imposes on the school district obligations beyond those authorized either by the IDEA or the New Hampshire imple- menting statute. Neither argument is persuasive. First, the IDEA and its companion regulations merely establish foundational requirements states may impose more stringent procedural and substantive requirements. See Burlington, 736 F.2d at 789. ___ __________ Second, section 1125 is well within the broad authority conferred upon the New Hampshire Board of Education to promulgate regula- tions under the IDEA. See N.H. Rev. Stat. Ann. 186-C:16 ___ (authorizing, inter alia, regulations governing appeals of IEP _____ ____ team decisions and regulations relating to "other matters" pertinent to implementation of the IDEA). 24 [S]tate standards, be they substantive or procedural, that exceed the federal basic floor of meaningful, beneficial educational opportunity . . . . will operate to determine what an appropriate education requires for a particular child in a given state. Id. at 789 (footnotes omitted); accord David D., 775 F.2d at 417 ___ ______ ________ (1st Cir. 1985) (it is "beyond cavil that the federal [IDEA] standard explicitly incorporates" certain state standards); Doe ___ v. Board of Educ. of Tullahoma City Sch., 9 F.3d 455, 457 (6th _______________________________________ Cir. 1993) (same, citing cases). It is plainly true, of course, as Timberlane argues, that not every procedural irregularity gives rise to liability under the IDEA. Nevertheless, "procedur- al inadequacies [that have] compromised the pupil's right to an appropriate education . . . or caused a deprivation of education- al benefits" are the stuff of successful IDEA actions. Roland M. _________ v. Concord Sch. Comm., 910 F.2d 983, 994 (1st Cir. 1990) (cita- ___________________ tions omitted), cert. denied, 499 U.S. 912 (1991). And that is ____ ______ exactly what happened here. We emphasized in Murphy I that whereas "parents are ________ entitled to request a hearing if they disagree with an IEP, state regulations impose upon Timberlane not only the right, but the obligation to do the same." 973 F.2d at 17 (emphasis in __________ original).13 Thus, by its longstanding procedural lapse in ____________________ 13Timberlane's misconceptions about the IDEA are betrayed, as much as anything, by the contention that its institution of truancy proceedings should be considered the rough equivalent of the administrative adjudication required under section 1125. Even assuming that Timberlane had done something more than merely file the truancy petition, a coercive adversarial proceeding against a parent is no substitute for a substantive review of the special educational needs of the handicapped child. 25 failing to initiate administrative review as required under section 1125, Timberlane abdicated its responsibility to termi- nate the IEP impasse preventing Kevin's access to a free and appropriate education. We think a procedural default which permits a disabled child's entitlement to a free and appropriate education to go unmet for two years constitutes sufficient ground for liability under the IDEA. See, e.g., W.G., 960 F.2d at 1484 ___ ____ ____ (when severe procedural flaws infect IEP process an action lies under IDEA); Roland M., 910 F.2d at 994 (same); Mrs. C., 916 _________ ________ F.2d at 72-73 (same); cf. Hampton Sch. Dist. v. Dobrowolski, 976 ___ __________________ ___________ F.2d 48, 53-54 (1st Cir. 1992) (technical IDEA violations may be insufficient to warrant setting aside IEP). 2. Summary Judgment 2. Summary Judgment ________________ Lastly, Timberlane claims that genuine issues of material fact precluded summary judgment as to whether: (1) Kevin's parents were intransigent and at least partly responsible for interrupting Kevin's education, and (2) the educational services Timberlane provided from 1985 to 1989 were "more than appropriate," and thus compensated for the educational loss occasioned during 1982-84. The party resisting summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). There is no trialworthy issue unless there is sufficient compe- tent evidence to enable a finding favorable to the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 ________ ____________________ 26 (1986). A painstaking review of the entire record has not dis- closed, nor does Timberlane identify, any evidence sufficient to generate a genuine factual issue as to either contention, even assuming their materiality.14 Instead, consistent with its prior strategy, Timberlane elected to try to fend off summary judgment through recourse to Fed. R. Civ. P. 56(f), which permits a party to establish, by affidavit, that evidence which would __ _________ _____ demonstrate a trialworthy issue is for some valid reason unavail- able. See Fed. R. Civ. P. 56; see also James W. Moore et al., ___ ___ ____ Moore's Federal Practice 56.22-56.24 (1993). Timberlane __________________________ relied entirely on its contention, unsubstantiated by the re- quired affidavit,15 that it needed "an opportunity to conduct ____________________ 14The first hurdle confronting Timberlane, of course, is that parental intransigence would not absolve the school district of its responsibility under section 1125. Indeed, section 1125 targets intransigence. See Murphy I, 973 F.2d at 17; supra p. ___ ________ _____ 23. Thus, Timberlane can demonstrate no issue of material fact ________ in this regard. But neither has it demonstrated a genuine issue _______ of fact. Although the record contains several "sarcastic" letters from Mr. Murphy to Mr. Sarbanis, Timberlane presented no evidence suggesting anything more than that Mr. Murphy was a tenacious and zealous advocate for his son's interests. Summary judgment should not be disturbed on so fragile a claim, especial- ly as two school district representatives praised Mr. Murphy as a cooperative and concerned, indeed model, parent. Even though Mr. Sarbanis, the one school district official with whom Mr. Murphy clearly had a stormy relationship, still lives in New Hampshire, Timberlane presented no affidavit from Sarbanis. And although Timberlane's pleadings are replete with allegations that Mr. Murphy was intransigent, "[b]rash conjecture, coupled with the hope that something concrete will materialize, is insufficient to block summary judgment." Dow v. United Bhd. of Carpenters, 1 ___ __________________________ F.3d 56, 58 (1st Cir. 1993). 15Given that the district court had already rejected essen- tially these same contentions, advanced in support of Timber- lane's laches defense, see supra pp. 6-8, the failure to comply ___ _____ 27 discovery to reconstruct [the] chronology [of Kevin's education] and to fill in critical gaps about events which occurred before, during and after the years in question[,]" and to "depose the out-of-state witnesses." The district court rejected Timberlane's Rule 56(f) initiative, on the ground that the evidence adduced at the hearing on the laches defense demonstrated that Timberlane had made no serious effort to present its putative evidence. The court accordingly ruled that Timberlane could not take refuge from summary judgment under Rule 56(f) since the memories of its witnesses were available for affidavit purposes in opposition to the Murphys' motion for summary judgment. The Rule 56(f) deter- mination is reviewed for abuse of discretion. First Nat'l Bank _________________ v. Cities Service Co., 391 U.S. 253, 294 (1968). We find none. __________________ In March of 1993, more than one month after the eviden- tiary hearing on the laches defense, the district court entered a scheduling order requiring the parties to submit "law and/or evidence" on the merits of the compensatory education claim thereby plainly signaling its intention to proceed beyond the procedural defenses interposed by Timberlane. Shortly thereafter the Murphys filed their motion for summary judgment. Thus, although it had clear notice that the district court would proceed to the merits, Timberlane made the strategic decision to ____________________ with the Rule 56(f) affidavit requirement was no mere technical lapse. See Hebert v. Wicklund, 744 F.2d 218, 222 (1st Cir. 1984) ___ ______ ________ (Rule 56(f) affidavit requirement generally to be enforced liberally, but district court need not spare litigants the effect of their own neglect). 28 persist with its litigation position, viz., that it could not ____ provide evidence because its witnesses (or their memories) were unavailable. The district court did not abuse its discretion by declining to credit or revisit the flawed premise underlying Timberlane's Rule 56(f) motion. III III CONCLUSION CONCLUSION __________ For the foregoing reasons, we uphold the district court order disallowing defendant-appellant's defenses and affirm the judgment in favor of plaintiffs-appellees. Affirmed. ________ 29